**NONCONFIDENTIAL VERSION**

# UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLEY, JUDGE

|  |  |
|---|---|
| NEXCO S.A., ) | |
| Plaintiff, ) | |
| v, ) | Case No. 22-00203 |
| UNITED STATES, ) | |
| Defendant, ) | |
| and, ) | |
| AMERICAN HONEY PRODUCERS ASSOCIATION and SIOUX HONEY ASSOCIATION, ) | |
| Defendant-Intervenors. ) | |

## DEFENDANT-INTERVENORS' COMMENTS IN SUPPORT OF REMAND RESULTS

R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC 20007
(202) 342-8400
Counsel to American Honey Producers Association and Sioux Honey Association

November 13, 2023

NONCONFIDENTIAL
VERSION

**Table of Contents**

**Page**

I.  BACKGROUND ................................................................................................................1

II. STANDARD OF REVIEW ...............................................................................................2

III. THE DEPARTMENT HAS PROVIDED A REASONED AND SUPPORTED EXPLANATION FOR ITS RELIANCE ON NEXCO'S ACQUISITION COSTS ................................................................................................3

IV. THE DEPARTMENT PROVIDED A REASONED AND SUPPORTED EXPLANATION REGARDING THE APPROPRIATE PERIOD TO COMPARE NEXCO'S THIRD-COUNTRY SALES PRICES AND U.S. SALES PRICES ................................................................................................................8

V.  CONCLUSION ...............................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

Diamond Sawblades Mfrs. Coalition v. United States,
  650 F. Supp. 2d 1331 (Ct. Int'l Trade 2009),
  aff'd, 626 F.3d 1374 (Fed. Cir. 2010)..................................................................................2

Nexco S.A. v. United States,
  Slip Op. 23-85 {639 F. Supp. 3d 1312} (Ct. Int'l Trade June 7, 2023)
  ("Remand Order")............................................................................................. *passim*

SKF USA Inc. v. United States,
  630 F.3d 1365 (Fed. Cir. 2011) ..........................................................................................6

Union Steel Manufacturing Co. v. United States,
  190 F. Supp. 3d 1326 (Ct. Int'l Trade 2016) ...............................................................9, 10

Xinjiamei Furniture Co. v. United States,
  968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ................................................................ 2-3

### Statutes and Regulations

19 U.S.C. § 1516a(b)(1)(B)(i)................................................................................................2

19 U.S.C. § 1677(28) .........................................................................................................5, 6

19 U.S.C. § 1677m(c)(1)................................................................................................... 6-7

19 U.S.C. § 3512(d) ................................................................................................................5

19 C.F.R. § 351.414(d)(3)......................................................................................................9

### Legislative

Statement of Administrative Action,
  Uruguay Round Agreements Act, H.R. Doc. No. 316-465
  Vol. 1, at 835 (1994) ("SAA").......................................................................................5, 6

NONCONFIDENTIAL
VERSION

**Administrative Determinations**

Final Results of Redetermination Pursuant to Court Remand
    (Dep't Commerce Oct. 13, 2023) (ECF Nos. 49-50) (CRR 3; PRR 6)
    ("Remand Results") ................................................................................................ *passim*

Issues and Decision Memorandum for the Final Affirmative Determination in the
    Less-Than-Fair-Value Investigation of Raw Honey from Argentina
    (Apr. 7, 2022) ("IDM") (PR 438) ................................................................................. 1-2, 11

Raw Honey From Argentina:
    Final Determination of Sales at Less Than Fair Value and Final Affirmative
    Determination of Critical Circumstances, 87 Fed. Reg. 22,179
    (Dep't Commerce Apr. 14, 2022) ("Final Determination") (PR 444) .................................. 1-2

On behalf of the American Honey Producers Association ("AHPA") and the Sioux Honey Association ("SHA") (collectively, "Defendant-Intervenors" or "Petitioners"), we submit the following comments in support of the U.S. Department of Commerce's (the "Department") Final Results of Redetermination Pursuant to Court Remand (Oct. 13, 2023) (ECF Nos. 49-50) (CRR 3; PRR 6)[1] (hereinafter, "Remand Results"), issued pursuant to United States Court of International Trade ("CIT") Slip Op. 23-85 {639 F. Supp. 3d 1312} (June 7, 2023) (hereinafter, "Remand Order"), in the above-referenced appeal of the antidumping duty investigation of Raw Honey from Argentina.

Defendant-Intervenors support the Department's decisions to continue to use NEXCO's acquisition costs for cost of production and to continue to compare NEXCO's U.S. sales prices with normal values on a monthly basis. The Remand Results comply with the Court's instructions and are supported by substantial evidence and in accordance with law. Defendant-Intervenors, therefore, respectfully request that the Court sustain the Remand Results in their entirety.

I.     BACKGROUND

The Department published the final determination in the underlying less-than-fair-value investigation on imports of raw honey from Argentina on April 14, 2022. Raw Honey From Argentina: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, 87 Fed. Reg. 22,179 (Dep't Commerce Apr. 14, 2022) (hereinafter, "Final Determination") (PR 444), and accompanying Issues and Decision

---

[1] Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR__)" and "(PR __)") provided in the Index to the Administrative Record filed with the Court on September 15, 2022 (ECF No. 20). Documents in the administrative remand record are cited by their confidential and/or public record number (i.e., "(CRR__)" and "(PRR __)") provided in the Index to the Remand Administrative Record filed with the Court on October 27, 2023 (ECF No. 51).

<u>Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Argentina</u> (Apr. 7, 2022) (hereinafter, "<u>IDM</u>") (PR 438). Plaintiff Nexco, S.A. ("Nexco") challenged three issues in this appeal, the Department's determinations to (1) rely on Nexco's acquisition costs as a proxy for cost of production, (2) apply a monthly inflation index when conducting the sales-below-cost test, and (3) conduct price comparisons of U.S. sales and third-country sales to Germany on a monthly basis. <u>Remand Order</u> at 2 {639 F. Supp. 3d at 1314}. The Court ordered remand on two of the three appealed issues, instructing the Department to provide (1) additional rationale or reconsider its reliance on Nexco's acquisition costs as a proxy for cost of production, and (2) additional rationale or reconsider its use of month-to-month comparisons for Nexco's U.S. sales and third country sales to Germany. <u>Id.</u> at 13-14, 20, 24-25 {639 F. Supp. 3d at 1319-20, 1322, 1324-25}.

The Department filed the <u>Remand Results</u> on October 13, 2023, maintaining its original findings and calculations for Nexco, and providing additional rationale on both remanded issues as instructed by the Court.

**II.      STANDARD OF REVIEW**

The Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The same standard of review applies to the Court's review of the agency's remand findings. <u>Diamond Sawblades Mfrs. Coalition v. United States</u>, 650 F. Supp. 2d 1331, 1352 (Ct. Int'l Trade 2009) (explaining that "{judicial} review of agency determinations issued pursuant to a court-ordered remand is governed by the same standard of review used in reviewing the {agency's} original determination"), <u>aff'd</u>, 626 F.3d 1374 (Fed. Cir. 2010). "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's

2

remand order.'" <u>Xinjiamei Furniture Co. v. United States</u>, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (citation omitted).

### III. THE DEPARTMENT HAS PROVIDED A REASONED AND SUPPORTED EXPLANATION FOR ITS RELIANCE ON NEXCO'S ACQUISITION COSTS

The Court remanded the Department's reliance on Nexco's acquisition costs for cost of production and held:

> Although Commerce's methodology might ensure that all of the costs of production are included, {}, it is unclear from Commerce's explanation how its methodology is not overinclusive. A lack of missing costs alone does not render Commerce's choice of a proxy reasonable, and Commerce gives no other justification for its choice. Therefore, the court remands this issue for further explanation or reconsideration.

<u>Remand Order</u> at 13-14 {639 F. Supp. 3d at 1319} (internal citations omitted). The Department has now provided a reasoned explanation, with additional detail, for relying on acquisition costs as a proxy for calculating the cost of production of subject merchandise. <u>See</u> <u>Remand Results</u> at 6-9, 25-29.

In the <u>Remand Results</u>, the Department explains that relying on Nexco's "own cost of the merchandise that it sold in the United States," e.g. acquisition costs, does not overstate the cost of production of raw honey. <u>Remand Results</u> at 7. The Department noted that Nexco's acquisition costs include the cost Nexco paid to purchase the raw honey plus the additional processing costs incurred to prepare the raw honey for exportation. <u>Id.</u> When comparing the acquisition costs to the limited beekeeper cost information on the record, the Department determined that the beekeeper costs are not necessarily "much lower" than the acquisition costs, as Nexco alleges, because the small sample of beekeeper costs requested by the Department are not representative of all beekeeper-supplier costs. <u>Id.</u> at 8. In fact, the Department selected the

particular beekeepers from which it requested cost information *specifically because of their low prices to Nexco* for testing purposes, and thus the differential between Nexco's acquisition costs and the beekeeper costs is no surprise. Id. at 27. Not only were the beekeepers not randomly selected or selected for their representative nature, but the Department chose beekeepers at one end of the spectrum, e.g. those having the "lowest sales prices" and, therefore, likely the lowest costs of production. Thus, the limited sample on the record cannot be used to make any inferences about the population of NEXCO's beekeeper suppliers, many of whom were likely have higher costs than those from which the Department collected information. Id. at 28 ("{W}e do not find that the limited sample of beekeeper-supplier costs establishes that *all* beekeeper-supplier costs are *necessarily* 'much lower' than Nexco's acquisition costs.") (emphasis added). In other words, because the Department did not have access to all of NEXCO's suppliers costs and profits and relied on the costs from the beekeepers with lowest priced transactions, they likely had the lowest costs.[2] There is no record evidence on which NEXCO can demonstrate that the proxy costs chosen were necessarily higher, or much higher, than the actual production costs of all of NEXCO's suppliers collectively. To further address the Court's remand instructions, the Department explained that because "Nexco sets the prices to the comparison and U.S. markets, . . . using Nexco's own COPs (or constructed values) for those sales is reasonable and does not overstate the costs of the products that were sold by Nexco." Remand Results at 9. Accordingly, using the respondents' acquisition costs for raw honey as the cost of production is

---

[2] Importantly, and as further discussed below, NEXCO itself had urged the Department not to even try to collect those data from its complete customer base because broader data from its suppliers would not readily be available. See Letter From Morris, Manning & Martin, LLP To Sec'y Commerce, Raw Honey from Argentina. Case No. A-357-823: NEXCO's Notification of Reporting Difficulty - Initial Antidumping Duty Questionnaire Response, at 4-6 (July 16, 2021) ("Nexco's July 16 Letter") (PR 126).

"not overinclusive of costs from the perspective of the company responsible for setting the U.S. price." Id.

In addition to this reasoned analysis, the Department further explained that its reliance on acquisition costs is compliant with the statute in response to Nexco's claims. Id. at 25-26. Contrary to Nexco's arguments, the statute "is not concerned with reducing the actual acquisition costs paid by the exporter to exclude the profits of an unaffiliated producer," but instead requires the Department to ensure that all costs have been captured. Id. at 25-26. Specifically, 19 U.S.C. § 1677(28) defines exporter or producer, for purposes of the normal value provision, to include both the exporter of the subject merchandise and the producer of the same subject merchandise "to the extent necessary to accurately calculate the total amount incurred and realized for costs, expenses, and profits in connection with production and sale of that merchandise." Id. at 25 (citing 19 U.S.C. § 1677(28)). The Statement of Administrative Action ("SAA")[3] confirms that "where different firms perform the production and selling functions," such as here, "Commerce may include the costs, expenses, and *profits* of each firm." Id. at 25-26 (citing Statement of Administrative Action, H.R. Doc. No. 103-465, Vol. 1, at 835 (1994) (emphasis added)). Because both the statute and the SAA refer to the inclusion of profits of both the exporter and producer when referencing the production and sale of subject merchandise, the Department's reliance on respondents' acquisition costs that include profits complies with the statute. Id. Accordingly, the Department has explained why its actions are lawful (in response to Nexco's

---

[3] "The statement of administrative action . . . shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application." 19 U.S.C. § 3512(d).

claims), and subsequently why its actions are reasonable (in compliance with the <u>Remand Order</u>).

Relatedly, the SAA's use of the term "may" demonstrates Congress's intent to grant the Department discretion "regarding how far beyond the exporter it will examine." <u>Remand Results</u> at 26 (citing SAA at 835) ("the purpose of {§ 1677(28)} . . . is to clarify that where different firms perform the production and selling functions, Commerce may include the costs, expenses, and profits of each firm in calculating cost of production and constructed value."). That is, the Department has the discretion to examine the costs of both the exporter and producer, or ***only*** that of the exporter. Here, the Department exercised this discretion to examine only the exporter (<u>i.e.</u>, Nexco), and the costs recorded in Nexco's books and records are its acquisition costs. <u>See</u> Nexco's July 16 Letter at 6 (PR 126) ("The acquisition cost data is sourced from NEXCO's books and records that it maintains in the ordinary course of business and in accordance with Argentine generally accepted accounting principles"). The Department is not obligated to use "actual cost data." <u>Id.</u> at 26 n.105 (citing <u>SKF USA Inc. v. United States</u>, 630 F.3d 1365, 1371 (Fed. Cir. 2011)). In exercising its discretion under the statute, the Department did "not find that using Nexco's own costs to calculate the COP of the honey that Nexco sold and exported unreasonably overstates COP of that honey." <u>Id.</u> at 26. Accordingly, the Department's actions were reasonable.

The statute also permits the use of a "suggested alternative form" for parties to submit information or data in an investigation to avoid imposing an unreasonable burden on respondents:

> If an interested party, promptly after receiving a request from the administering authority or the Commission for information, notifies the administering authority or the Commission (as the case

6

> may be) that such party is unable to submit the information requested in the requested form and manner, together with a full explanation and suggested alternative forms in which such party is able to submit the information, the administering authority or the Commission (as the case may be) shall consider the ability of the interested party to submit the information in the requested form and manner and may modify such requirements to the extent necessary to avoid imposing an unreasonable burden on that party.

19 U.S.C. § 1677m(c)(1). After it received a cost questionnaire from the Department, NEXCO invoked § 1677m(c)(1) specifically to offer acquisition cost as an alternative to supplier COP information, stating:

> Given these difficulties, and pursuant to 19 U.S.C. § 1677m(c)(1), NEXCO is providing the Department with a "suggested alternative form{}" in which it is "able to submit the information." NEXCO is able to provide the Department with fully verifiable acquisition costs of the honey that it procures from its hundreds of beekeeper suppliers along with the cost data for processing, testing, blending, and homogenization . . . Supplying this acquisition cost data instead of beekeeper cost data is a reasonable alternative. . .

NEXCO's July 16 Letter at 6 (PR 126).

The Remand Results confirm that the Department "determined to rely on the alternative form initially suggested by Nexco, *i.e.* acquisition costs, but with a limited testing of beekeeper costs to satisfy the statute's concern that there were no missing costs." Remand Results at 27. The Department implemented the very approach that Nexco requested at the start of the investigation to avoid the burden that attempting to obtain a complete or representative population of beekeeper-supplier costs would impose on respondents. Id. Accordingly, the Department's use of acquisition costs as a "suggested alternative form" to avoid imposing an unreasonable burden on NEXCO, following a notice of difficulty by NEXCO in which it requested this very remedy, is justified under § 1677m(c)(1).

For these reasons, the Court should affirm the additional rationale provided in the Remand Results to support the Department reliance on Nexco's acquisition costs.

## IV. THE DEPARTMENT PROVIDED A REASONED AND SUPPORTED EXPLANATION REGARDING THE APPROPRIATE PERIOD TO COMPARE NEXCO'S THIRD-COUNTRY SALES PRICES AND U.S. SALES PRICES

The Court remanded the Department's determination to use shorter averaging periods for not "specify{ing} what changes occurred in either German prices or U.S. prices, e.g., whether the prices increased" and for "not explain{ing} how Nexco's prices differed significantly over the POI . . . ." Remand Order at 22-25 {639 F. Supp. 3d at 1323-25}. The Remand Results now confirm that Nexco's German and U.S. prices differed significantly over POI. Remand Results at 13-23, 31-35.

The Department explains that:

> {W}e find that an examination of Nexco's sale prices themselves also demonstrates that such prices differed significantly during the POI, and further supports our finding that using shorter averaging periods for prices are appropriate.

Remand Results at 23 (citing Letter From Morris, Manning & Martin, LLP To Sec'y Commerce, *Raw Honey from Argentina, Case No. A-357-823: NEXCO S.A.'s Supplemental Section D Questionnaire Response*, at 41 and Exhibit D-41 (Oct. 12, 2021) (hereinafter, "Oct. 12 SDQR") (CR 433-36; PR 297)). In examining the record, the Department found that "there is a correlation between changing costs and final net sales prices," and combined with the significant cost changes due to high peso inflation," these factors demonstrate that "Nexco's sales prices, in both the U.S. and comparison markets, differed significantly during the POI." Id. at 23. The Department provided analysis to demonstrate these differences:

> {T}he U.S. dollar gross unit prices that Nexco reported also differ over the POI, [

8

> ]. For example, Nexco's product with the largest sales volume sold in the U.S. market saw an [
>
> ] over the POI, while Nexco's product with the largest sales volume sold in the comparison market saw an [
>
> ] over the POI. Commerce's own analysis in the *Final Determination* also reflects this trend with respect to the monthly comparison market prices used in the calculation of normal value.

Id. at 33 (citing Petitioners' Administrative Case Brief (Jan. 14, 2022) at Attachment 2 (CR 802; PR 421)). In aggregate (i.e., all sales), Nexco's USD-denominated U.S. prices [      ] by [    ] percent over the POI and its USD-denominated comparison market prices [    ] by [   ] percent over the POI. See Petitioners' Rebuttal Brief at Att. 2 (CR 805; PR 426). Accordingly, the changes in Nexco's U.S. and comparison market prices are [

] even when denominated in USD. Thus, the Department has relied upon substantial record evidence demonstrating that both U.S. and comparison market sales prices [             ] during the POI, thereby supporting the use of monthly averaging periods.[4] See Remand Results at 33.

In Union Steel Manufacturing Co. v. United States, the CIT upheld the Department's practice to match U.S. sales to normal value using the same shorter time periods that the Department uses to match comparison market sales to costs, finding that "it was reasonable for Commerce to regard changing production costs, as generally reflected in prices, to relate to the question of the timing, i.e., the contemporaneity, of price-to-price comparisons between U.S. and

---

[4] The Remand Results explain that "{t}o the extent that 19 CFR 351.414(d)(3) may limit Commerce's authority to use shorter price averaging periods as held by the CIT, the record evidence does demonstrate that prices differed over the POI." Remand Results at 32 (citing Remand Order at 21-22 {639 F. Supp. 3d at 1323}).

home market sales." Remand Results at 33 (citing 190 F. Supp. 3d 1326, 1339-41 (Ct. Int'l Trade 2016)). While Union Steel addressed the Department's quarterly cost-averaging methodology, not its high inflation methodology, the same principle should apply in high inflation circumstances: i.e., if the Department compares comparison market prices to costs on a monthly basis, then it should also compare U.S. prices to comparison market prices on a monthly basis. Id. at 33-34. Here, the Department "reasonably found that costs may be defined by month rather than by the entire period because of the presence of high inflation in the domestic market, similar to the situation in Union Steel where Commerce found the costs may be defined by quarter." Id. at 34.

The Remand Results also confirm that "high inflation impacts the margin calculations even when the invoiced sale prices are not denominated in the respondent's domestic currency." Remand Results at 35. During the investigation, Nexco explained that regardless of in which market, or in which currency, the company earns sales revenue, it has to return that sales revenue to Argentina and convert it into ARS in order to recoup its inflation-driven, ARS-denominated costs. See id. at 35 (citing Letter From Morris, Manning & Martin, LLP To Sec'y Commerce, *Raw Honey from Argentina, Case No. A-357-823: NEXCO S.A.'s Sections B-D Questionnaire Response,* at B-30, C-28 (Aug. 25, 2021) (CR 216; PR 205) (describing how NEXCO has to convert the USD-denominated sales revenue it earns from selling in Germany and the United States into pesos)). Nexco's denominating its selling prices in USD does not immunize those prices from inflationary pressures because the devaluation of the ARS with respect to the USD did not keep pace with Argentine inflation. Id. In the Remand Results, the Department cites record evidence in the form of Petitioners' administrative rebuttal brief containing analysis that

demonstrates this fact.[5]  Id. at 35 n.152 (citing Petitioners' Rebuttal Brief at 52-54 and Att. 1 (Jan. 31, 2022) (CR 805; PR 426)).

NEXCO also conceded during the investigation that Argentine inflation affected its costs and the record shows that its prices were in USD.  See NEXCO's Case Brief at 35 (Jan. 14, 2022) (CR 801; PR 420) ("price increases in the acquisition costs far exceed the rate of inflation but certainly fully reflected inflation").[6]  Thus, NEXCO admits that its inflation-driven costs would put inflationary pressures on its selling prices even when those prices are denominated in USD.  The Department confirmed this to be the case by finding that NEXCO's costs are "reasonably linked" with its selling prices.  Final IDM at 27; see also Remand Results at 23 ("Nexco's sale prices correlate with changes in Nexco's cost of manufacturing, which the Remand Order acknowledges were impacted by high peso inflation.") (citations omitted).

---

[5]  Petitioners' analysis explains that if an Argentine company kept its USD-denominated selling prices constant in September and October 2020, then its ARS-denominated sales revenue would have increased by 2.6860 percent from September to October due to the devaluation of the ARS with respect to the USD based on the record data for exchange rates.  See Petitioners' Rebuttal Brief at 52-54 and Att. 1 (CR 805; PR 426).  Petitioners also explained that by contrast, the Argentine company's costs would have increased by 6.0455 percent from September to October based on the record data for Argentine due to inflation.  Id.  This means that in order to maintain the same profitability level in September and October, the Argentine company would have to increase its USD-denominated selling prices by 3.2716 percent from September to October, which is an annualized increase of 47.1536 percent.  Id.  Consequently, the effect of high inflation on a company's costs puts inflationary pressure on its selling prices, even when those selling prices are denominated in USD.

[6]  Petitioners also submitted regressions showing that NEXCO's USD-denominated selling prices were driven by Argentine inflation.  Petitioners' Rebuttal Brief at 57-60 and Atts. 3-5 (Jan. 31, 2022) (CR 805; PR 426).

11

NONCONFIDENTIAL
VERSION

## V.     CONCLUSION

For the reasons provided herein, we respectfully request that the Court affirm the Department's <u>Remand Results</u> in their entirety.

Respectfully submitted,

*/s/ Melissa M. Brewer*

R. ALAN LUBERDA
MELISSA M. BREWER

Counsel to Defendant-Intervenors

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for American Honey Producers Association ("AHPA") and the Sioux Honey Association ("SHA") (collectively, "Defendant-Intervenors" or "Petitioners") certifies that these Comments in Support of the U.S. Department of Commerce's Remand Results contain 3,580 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  November 13, 2023