NONCONFIDENTIAL
VERSION

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| NEXCO S.A., | ) |
| | ) |
|        Plaintiff, | ) |
| | ) |
|    v. | )    Court No. 22-00203 |
| | ) |
| UNITED STATES, | ) |
| | ) |
|       Defendant, | ) |
| | ) |
| AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION, | ) |
| | ) |
|    Defendant-Intervenors. | ) |
| | ) |

### DEFENDANT-INTERVENORS' REPLY COMMENTS
### IN SUPPORT OF REMAND RESULTS

R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, NW, Suite 400
Washington, DC 20007
(202) 342-8400

Counsel to Defendant-Intervenors Honey Producers Association and Sioux Honey Association

Dated: December 22, 2023

NONCONFIDENTIAL
VERSION

## Table of Contents

                                                                                    **Page**

I.     BACKGROUND ................................................................................................2

II.    STANDARD OF REVIEW ...............................................................................3

III.   NEXCO'S CHALLENGES TO THE DEPARTMENT'S RELIANCE ON
       ACQUISITION COSTS PRIMARILY ATTEMPT TO RE-LITIGATE
       PREVIOUSLY DECIDED ISSUES, AND OTHERWISE ARE
       UNPERSUASIVE.................................................................................................3

IV.    CONTRARY TO NEXCO'S CLAIMS, THE REMAND RESULTS
       ANALYSIS SUPPORTS THE USE OF MONTHLY COMPARISON
       PERIODS FOR THIRD-COUNTRY SALES PRICES AND U.S. SALES
       PRICES .............................................................................................................10

V.     CONCLUSION...................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Consolo v. Fed. Mar. Comm'n,
   383 U.S. 607 (1966).............................................................................................7

Diamond Sawblades Mfrs. Coalition v. United States,
   650 F. Supp. 2d 1331 (Ct. Int'l Trade 2009), <u>aff'd</u>, 626 F.3d 1374 (Fed. Cir.
   2010) ....................................................................................................................3

Downhole Pipe & Equip., L.P. v. United States,
   776 F.3d 1369 (Fed. Cir. 2015)..........................................................................12

McKart v. United States,
   395 U.S. 185 (1969).............................................................................................16

Noviant OY v. United States,
   451 F. Supp. 2d 1367 (Ct. Int'l Trade 2006) ........................................................7

Union Steel Manufacturing Co. v. United States, 190 F. Supp. 3d 1326, 1339-41
   (Ct. Int'l Trade 2016)..........................................................................................15

United States Steel Group v. United States,
   96 F.3d 1352 (Fed. Cir. 1996).............................................................................7

Xinjiamei Furniture Co. v. United States,
   968 F. Supp. 2d 1255 (Ct. Int'l Trade 2014) ........................................................3

Nexco S.A. v. United States,
   Slip Op. 23-85 {639 F. Supp. 3d 1312} (Ct. Int'l Trade June 7, 2023)
   ("<u>Remand Order</u>")............................................................................. *passim*

**Statutes and Regulations**

19 U.S.C. § 1516a(b)(1)(B)(i)....................................................................................3

19 U.S.C. § 1677(28) ..................................................................................................5

19 U.S.C. § 3512(d) ....................................................................................................6

28 U.S.C. § 2637(d) ....................................................................................................2

19 CFR § 351.414(d)(3)..........................................................................................10, 11

NONCONFIDENTIAL
VERSION

**Administrative Determinations**

Raw Honey From Argentina: Final Determination of Sales at Less Than Fair
    Value and Final Affirmative Determination of Critical Circumstances, 87 Fed.
    Reg. 22,179 (Dep't Commerce Apr. 14, 2022) ("Final Determination") and
    accompanying Issues and Decision Memorandum for the Final Affirmative
    Determination in the Less-Than-Fair-Value Investigation of Raw Honey from
    Argentina (Apr. 7, 2022) ("IDM").................................................................................1, 2, 15

Final Results of Redetermination Pursuant to Court Remand
    (Dep't Commerce Oct. 13, 2023) (ECF Nos. 49-50) (CRR 3; PRR 6)
    ("Remand Results") ......................................................................................................... *passim*

Notice of Final Determination of Sales at Less Than Fair Value: Live Swine From
    Canada, 70 Fed. Reg. 12,181 (Dep't Commerce Mar. 11, 2005) .....................................16, 17

Notice of Final Determination of Sales at Less Than Fair Value: Polyvinyl
    Alcohol from Taiwan, 61 Fed. Reg. 14,064 (Dep't Commerce Mar. 29, 1996) ...............16, 17

NONCONFIDENTIAL
VERSION

On behalf of the American Honey Producers Association ("AHPA") and the Sioux Honey Association ("SHA") (collectively, "Defendant-Intervenors" or "Petitioners"), we submit the following reply to comments in response to the opposition filed on behalf of Nexco S.A. ("Nexco"). Plaintiff Nexco S.A.'s Comments on Commerce's Remand Redetermination (Nov. 13, 2023) (ECF No. 56) (hereinafter, "Nexco's Comments"). Defendant-Intervenors continue to support the U.S. Department of Commerce's ("the Department" or "Commerce") <u>Final Results of Redetermination Pursuant to Court Remand</u> (Oct. 13, 2023) (ECF Nos. 49-50) (CRR 3; PRR 6)[1] (hereinafter, "<u>Remand Results</u>"), issued pursuant to United States Court of International Trade ("CIT") Slip Op. 23-85 {639 F. Supp. 3d 1312} (June 7, 2023) (hereinafter, "<u>Remand Order</u>"), in the appeal of the antidumping duty investigation of Raw Honey from Argentina.

As discussed in Defendant-Intervenors' November 13 Comments in Support of the Remand Results, the Department's decisions to continue to use Nexco's acquisition costs for cost of production and to compare Nexco's U.S. sales prices with normal values on a monthly basis are supported by substantial evidence and are in accordance with law, and otherwise comply with the <u>Remand Order</u>. Defendant-Intervenors, therefore, respectfully request that the Court sustain the <u>Remand Results</u> in their entirety and reject Nexco's arguments in opposition to the Department's findings.

---

[1]   Documents in the administrative record are cited by their confidential and/or public record number (i.e., "(CR__)" and "(PR __)") provided in the Index to the Administrative Record filed with the Court on September 15, 2022 (ECF No. 20). Documents in the administrative remand record are cited by their confidential and/or public record number (i.e., "(CRR__)" and "(PRR __)") provided in the Index to the Remand Administrative Record filed with the Court on October 27, 2023 (ECF No. 51).

NONCONFIDENTIAL
VERSION

## I.   **BACKGROUND**

The Department published the final determination in the underlying less-than-fair-value investigation on imports of raw honey from Argentina on April 14, 2022.  Raw Honey From Argentina: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, 87 Fed. Reg. 22,179 (Dep't Commerce Apr. 14, 2022) (hereinafter, "Final Determination") (PR 444), and accompanying Issues and Decision Memorandum for the Final Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Argentina (Apr. 7, 2022) (hereinafter, "IDM") (PR 438).  Plaintiff Nexco, S.A. ("Nexco") challenged three issues in this appeal, the Department's determinations to (1) rely on Nexco's acquisition costs as a proxy for cost of production, (2) apply a monthly inflation index when conducting the sales-below-cost test, and (3) conduct price comparisons of U.S. sales and third-country sales to Germany on a monthly basis.  Remand Order at 2 {639 F. Supp. 3d at 1314}.   The Court ordered remand on two of the three appealed issues, instructing the Department to provide (1) additional rationale or reconsider its reliance on Nexco's acquisition costs as a proxy for cost of production, and (2) additional rationale or reconsider its use of month-to-month comparisons for Nexco's U.S. sales and third country sales to Germany.  Id. at 13-14, 20, 24-25 {639 F. Supp. 3d at 1319-20, 1322, 1324-25}.

The Department filed the Remand Results on October 13, 2023, maintaining its original findings and calculations for Nexco, and providing additional rationale on both remanded issues as instructed by the Court.  On November 13, 2023, Nexco filed comments in opposition to the Remand Results,[2] and Defendant-Intervenors filed comments in support of the Remand Results.

---

[2]    It is worth noting that Nexco's Comments on the Draft Remand findings before Commerce totaled 7 pages, whereas its Comments to the Court total 25 pages. As Defendant-Intervenors

(cont'd on next page)

NONCONFIDENTIAL
VERSION

## II.    <u>STANDARD OF REVIEW</u>

The Court will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). The same standard of review applies to the Court's review of the agency's remand findings. <u>Diamond Sawblades Mfrs. Coalition v. United States</u>, 650 F. Supp. 2d 1331, 1352 (Ct. Int'l Trade 2009) (explaining that "{judicial} review of agency determinations issued pursuant to a court-ordered remand is governed by the same standard of review used in reviewing the {agency's} original determination"), <u>aff'd</u>, 626 F.3d 1374 (Fed. Cir. 2010).   "The results of a redetermination pursuant to court remand are also reviewed 'for compliance with the court's remand order.'" <u>Xinjiamei Furniture Co. v. United States</u>, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (citation omitted).

## III.   <u>NEXCO'S CHALLENGES TO THE DEPARTMENT'S RELIANCE ON ACQUISITION COSTS PRIMARILY ATTEMPT TO RE-LITIGATE PREVIOUSLY DECIDED ISSUES, AND OTHERWISE ARE UNPERSUASIVE</u>

Nexco's arguments against Commerce's reliance on acquisition costs are, in large part, an attempt to re-litigate issues the Court already addressed in the <u>Remand Order</u>, and otherwise misinterpret the <u>Remand Results</u> or are unpersuasive.

<u>First</u>, Nexco argues the <u>Remand Results</u> improperly shift the cost analysis from beekeeper COP to Nexco's COP.   <u>See</u> NEXCO's Comments at 4-6.   Nexco claims that Commerce is concerned with capturing all costs, but fails to adjust Nexco's acquisition costs and

---

discuss below, the Court should apply the doctrine of administrative exhaustion, as appropriate, to the extent Nexco is raising arguments before the Court that it failed to raise before the agency. 28 U.S.C. § 2637(d) ("{T}he Court of International Trade shall, where appropriate, require the exhaustion of administrative remedies.").

NONCONFIDENTIAL
VERSION

thus overstates beekeepers' actual costs.  Id. at 4.  In so doing, Nexco posits that Commerce improperly looks at Nexco's COP, which it claims is irrelevant because Nexco is not the producer of the foreign like product.  Id. at 5-6.

None of these arguments is relevant at this stage of the appeal.  No party is arguing that Nexco is the producer of the foreign like product; that issue is settled.  The remand analysis is responsive to the Court's order, not a "departure from Commerce's settled practice for calculating COP in raw goods cases."  See Nexco's Comments at 5-6.  Indeed, the Court already held that "although Nexco disagrees with the result of its decision, Commerce has not failed to provide 'reasoned analysis' for changing its practice of collecting cost data directly from beekeepers."  Remand Order, Slip Op. 23-85 at 11.  The Court also found that "in order to meet its statutory obligation of ensuring that 'all costs have been captured,' Commerce reasonably concludes that it could not use the beekeepers' reported COP."  Id. at 12.

The only issue the Court remanded to Commerce is as follows:

> Although Commerce's methodology might ensure that all of the costs of production are included, {}, it is unclear from Commerce's explanation how its methodology is not overinclusive.  A lack of missing costs alone does not render Commerce's choice of a proxy reasonable, and Commerce gives no other justification for its choice.  Therefore, the court remands this issue for further explanation or reconsideration.

Id. at 13-14 {639 F. Supp. 3d at 1319} (internal citations omitted).  In remanding Commerce's findings for further explanation of how its methodology is "reasonable," the Court made no other findings that the methodology was unlawful or inconsistent with the relevant statutory provisions discussed in the parties' briefs and the Remand Opinion.

With these findings in mind, it is evident that Nexco's argument that Commerce is somehow re-visiting its "raw goods" policy on remand are an attempt to re-litigate the Court's

prior findings.   The <u>Remand Results</u> analysis that Nexco challenges on pages 5-6 of its comments are not an improper shift to Nexco's COP from the beekeepers' COP, but instead are a discussion of why it is reasonable to use acquisition costs in light of Nexco's role in the purchasing of raw honey from beekeepers.  This is precisely the type of analysis that the Court sought when it ordered Commerce to explain why the use acquisition costs is reasonable and not overinclusive as a proxy for beekeeper costs.[3]  <u>Remand Order</u> at 13-14.

Nexco's statutory arguments are also irrelevant at this stage because the Court recognized the governing statutory provisions in the <u>Remand Order</u> and held that Commerce needed only to explain further why using acquisition costs was a "reasonable proxy" in this case.  <u>See</u> Nexco Comments at 7-9; <u>Remand Order</u> at 13 ("Finally, Nexco challenges, and Commerce fails to explain why, Nexco's acquisition costs are a reasonable proxy for the beekeepers' COP.").  The Court did not find any aspect of Commerce's approach to be unlawful or inconsistent with the relevant statutory provisions.  <u>See generally id.</u> at 7-14.  Nexco's arguments that the governing statutory provisions prohibit Commerce from relying on acquisition costs are simply an attempt to re-litigate its statutory arguments are unpersuasive and should be rejected.[4]  In any case, Nexco's arguments are wrong because the statute "is not concerned with reducing the actual

---

[3]   NEXCO's Comments contain factual misstatements as well.  For example, NEXCO states "Commerce argues, in essence, that it does not matter whether the acquisition prices substantially overstate the beekeepers' actual costs."  Nexco Comments at 4.  But Commerce stated the exact opposite – "We do not find that relying on Nexco's own cost of the merchandise that it sold in the United States overstates the COP of such merchandise. . . . For Nexco, COP is inclusive of the acquisition cost it paid for the raw honey plus additional processing costs it incurred in preparing the raw honey for export."  <u>Remand Results</u> at 7.  Contrary to Nexco's claim, Commerce did not find that it "does not matter" whether the acquisition prices overstate beekeepers' actual costs, the agency explicitly found and explained that it was *not* overstating COP by relying on acquisition prices.  <u>Id.</u>

[4]   Defendant-Intervenors November 13 Comments in Support of the Remand Results provided additional analysis regarding why the <u>Remand Results</u> are consistent with the relevant statutory provisions.  <u>See</u> Def-Int. Nov. 13 Comments at 5-7.

acquisition costs paid by the exporter to exclude the profits of an unaffiliated producer," but instead requires the Department to ensure that all costs have been captured.  Remand Results at 25-26.  19 U.S.C. § 1677(28) defines exporter or producer, for purposes of the normal value provision, to include both the exporter of the subject merchandise and the producer of the same subject merchandise "to the extent necessary to accurately calculate the total amount incurred and realized for costs, expenses, and profits in connection with production and sale of that merchandise."  Id. at 25 (citing 19 U.S.C. § 1677(28)).  The Statement of Administrative Action ("SAA")[5] confirms "where different firms perform the production and selling functions," such as here, "Commerce may include the costs, expenses, and *profits of each firm in calculating cost of production* and constructed value."  Id. at 25-26 (citing Statement of Administrative Action, H.R. Doc. No. 103-465, Vol. 1, at 835 (1994) (emphasis added)).  Because both the statute and the SAA refer to the inclusion of profits of *both* the exporter and producer when referencing the production and sale of subject merchandise, the Department's reliance on acquisition costs that include profits is lawful.  Id.  The SAA's use of the term "may" demonstrates Congress's intent to grant the Department discretion "regarding how far beyond the exporter it will examine."  Remand Results at 26 (citing SAA at 835).  The SAA language specifically envisions and encompasses Commerce's approach here to rely on the exporter's (Nexco's) acquisition costs for raw honey.

---

[5]   "The statement of administrative action . . . shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the Uruguay Round Agreements and this Act in any judicial proceeding in which a question arises concerning such interpretation or application."  19 U.S.C. § 3512(d).

Second, Nexco argues that the Remand Results fail to account for record evidence that beekeeper costs are substantially below acquisition costs and fails to support the conclusion that acquisition costs are a reasonable proxy for beekeeper costs. Nexco Comments at 9-11. Nexco's proposed solution is to use the beekeeper costs to make a downward adjustment to acquisition costs to eliminate profit to "calculate a *more reasonable proxy* for actual beekeeper costs." Nexco's Comments at 10 (emphasis added). These arguments fail for two reasons.

As a threshold matter, Nexco's arguments are inconsistent with this Court's standard of review. Nexco is arguing what it believes Commerce *should have done*, but the Court is obligated to uphold the agency's findings if they are *reasonable* and supported by substantial evidence. Noviant OY v. United States, 451 F. Supp. 2d 1367, 1377 (Ct. Int'l Trade 2006) ("As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology.") (citing Ceramica Regiomontana, S.A. v. United States, 636 F. Supp. 96 (1986)). It does not matter if another approach is also reasonable, "more" reasonable, or if reasonable minds could disagree; if Commerce's approach is reasonable, lawful, and supported by substantial evidence, as it is here, it should be sustained. Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966) ("{T}he possibility of drawing two different conclusions from the evidence does not prevent {Commerce's} finding from being supported by substantial evidence."); see also United States Steel Group v. United States, 96 F.3d 1352, 1356-57 (Fed. Cir. 1996) (it is the agency's task to evaluate and assign weight to the evidence).

The second reason Nexco's argument fails is because it is simply wrong -- Commerce *did* explain why this approach is reasonable based on the record evidence.  The <u>Remand Results</u> state that relying on Nexco's "own cost of the merchandise that it sold in the United States," <u>e.g.</u>, acquisition costs, does not overstate the cost of production of raw honey but rather includes the cost Nexco paid to purchase the raw honey plus the additional processing costs incurred as the exporter to prepare the raw honey for exportation, as permitted by the statute.  <u>Remand Results</u> at 7, 28 ("{W}e find that using Nexco's own COPs (or constructed values) for those sales is reasonable and does not overstate the costs of the products that were sold by Nexco.").  When comparing the acquisition costs to the (limited) beekeeper cost information on the record, the Department determined that the beekeeper costs are not necessarily, as Nexco claims, "substantially lower" than the acquisition costs because the small sample of beekeeper costs requested by the Department are not representative of all beekeeper-supplier costs.  <u>Id.</u> at 8.  In fact, the Department selected the particular beekeepers from which it requested cost information *specifically because of their low prices to Nexco* for testing purposes, and thus the differential between Nexco's acquisition costs and the beekeeper costs is no surprise.  <u>Id.</u> at 27.  Not only were the beekeepers not randomly selected or selected for their representative nature, but the Department chose beekeepers at one end of the spectrum, e.g. those having the "lowest sales prices" and, therefore, likely the lowest costs of production.  Thus, the limited sample on the record cannot be used to make any inferences about the population of Nexco's beekeeper suppliers -- they are neither representative of "all" beekeeper costs nor "a reasonable proxy" for beekeeper costs (Nexco's Comments at 9) -- many of whom were likely have higher costs than those from which the Department collected information.  <u>Id.</u> at 28 ("{W}e do not find that the limited sample of beekeeper-supplier costs establishes that all beekeeper-supplier costs are

necessarily 'much lower' than Nexco's acquisition costs.") and 27 ("{T}his significantly curtailed and purposeful selection of two beekeepers neither reflects a statistically valid sample {} nor covers a *meaningful percentage* of the population of beekeeper suppliers to Nexco.") (emphasis added).  This analysis squarely undermines Nexco's claim that Commerce has not addressed evidence that beekeeper costs are "substantially below" acquisition costs.  Nexco's Comments at 9.

Furthermore, the Department did not have access to all, or even a representative sample, of Nexco's suppliers' costs and profits and relied on the costs from the beekeepers with lowest priced transactions, which likely had the lowest costs.  There is no record evidence to which Nexco can point to demonstrate that the proxy costs chosen were necessarily higher, or much higher, than the actual production costs of all, or a representative group, of Nexco's suppliers. Indeed, at the beginning of the investigation, *Nexco itself specifically discouraged* the Department from trying to collect broader data from its suppliers because it would not readily be available.  See Letter From Morris, Manning & Martin, LLP To Sec'y Commerce, Raw Honey from Argentina. Case No. A-357-823: NEXCO's Notification of Reporting Difficulty - Initial Antidumping Duty Questionnaire Response, at 4-6 (July 16, 2021) ("Nexco's July 16 Letter") (PR 126).  To further address the Court's remand instructions, the Department explained that because "Nexco sets the prices to the comparison and U.S. markets, . . . using Nexco's own COPs (or constructed values) for those sales is reasonable and does not overstate the costs of the products that were sold by Nexco."  Remand Results at 9.  Accordingly, using the respondents' acquisition costs for raw honey as the cost of production is "not overinclusive of costs from the perspective of the company responsible for setting the U.S. price."  Id.  Commerce's

NONCONFIDENTIAL
VERSION

methodology is, therefore, not rendered unreasonable and the methodology proposed by Nexco is not objectively more accurate.

For these reasons, as well as the reasoning discussed in Defendant-Intervenors' November 13 comments in support of the remand findings, the Court should reject Nexco's arguments and affirm the additional rationale provided in the Remand Results to support the Department reliance on Nexco's acquisition costs.

## IV.    CONTRARY TO NEXCO'S CLAIMS, THE REMAND RESULTS ANALYSIS SUPPORTS THE USE OF MONTHLY COMPARISON PERIODS FOR THIRD-COUNTRY SALES PRICES AND U.S. SALES PRICES

Nexco presents three challenges to the Department's reliance on monthly comparison periods for third-country sales prices and U.S. sales prices in the Remand Results. First, Nexco argues that Commerce's actions are inconsistent with the authority granted in 19 CFR § 351.414(d)(3). Nexco's Comments at 14-15. Second, Nexco claims that the existence of hyperinflation does not justify using shorter averaging periods when prices used to determine normal value are in U.S. dollars. Id. at 15-19. Third, Nexco argues that Commerce otherwise does not support its finding that prices differed significantly within the meaning of the 19 CFR § 351.414(d)(3). Id. at 19-25. Each of these arguments should be rejected.

First, the relevant regulatory provision provides:

> **Time period over which weighted average is calculated.** When applying the average-to-average method in an investigation, the Secretary normally will calculate weighted averages for the entire period of investigation. *However, when normal values, export prices, or constructed export prices differ significantly over the course of the period of investigation, the Secretary may calculate weighted averages for such shorter period as the Secretary deems appropriate.* When applying the average-to-average method in a review, the Secretary normally will calculate weighted averages on a monthly basis and compare the weighted-average monthly export

> price or constructed export price to the weighted-average normal
> value for the contemporaneous month.

19 CFR § 351.414(d)(3) (emphasis added).  The stated condition for deviating from the preferred average-to-average method in an investigation is a finding that normal values, export prices, or constructed export prices "differ significantly over the court of the period of the investigation." Id.  If that condition is met, then Commerce may use a shorter period for calculating weighted averages.  Here, the condition for using a shorter period is met because, consistent with the Court's order, Commerce explained that "both normal values based on comparison market prices and U.S. prices differed significantly over the course of the POI."  Remand Results at 23.[6] Because Commerce found that both normal values and U.S. prices differed significantly during the investigation period, and because that is the condition set forth in the regulation for invoking the exception, the agency has provided a reasonable and justified explaining for invoking a shorter averaging periods.  Id.

Importantly, and as Commerce noted in the Remand Results, Nexco now appears to contradictorily argue that the regulatory condition is not satisfied for Commerce to use a shorter averaging period, when Nexco has explicitly argued in favor of quarterly averaging.  Remand Results at 32 ("Nexco's own position on whether Commerce has satisfied 19 CFR § 351.414(d)(3) is inconsistent with its arguments before the Court.  Both quarterly and monthly averaging periods are shorter than the 'normally' used POI averaging period of an investigation.");  Remand Order at 20 ("Nexco claims that Commerce improperly compared its

---

[6]    Although the Department provided additional analysis in the Remand Results to explain that it believes it is not constrained from using shorter averaging periods in other situations that may arise, and while Nexco may disagree with that belief, it is tangential to the issue now presented before the Court because Commerce determined the regulatory condition is met.  Compare Nexco's Comments at 14-15 with Remand Results at 22-23.

U.S. sales with third-country sales to Germany on a monthly basis, rather than a quarterly basis. Pl. Br. at 36–45."). To apply quarterly averaging, pursuant to the regulation, Commerce would also need to find that prices differ significantly, a finding that Nexco is challenging here. See Nexco Comments at 14-19. Thus, it would appear that Nexco, by arguing in favor of quarterly averaging before the Court, has already conceded that prices differ significantly within the meaning of the regulation such that a shorter averaging period may be employed. Nexco cannot have it both ways, and its inconsistent arguments undermine its challenges to Commerce's use of monthly averaging in this appeal.

Second, Nexco claims that the existence of hyperinflation does not justify using shorter averaging periods when prices used to determine normal value are in U.S. dollars. Id. at 15-19. Again, as noted above, it appears that Nexco (by seeking the use of quarterly averaging periods) concedes that the regulatory condition, prices differing significantly, is satisfied here such that Commerce may use shorter averaging periods *even though* prices used to determine normal value are in U.S. dollars. Accepting this concession, Nexco's argument then boils down to simply a preference for quarterly averaging rather than monthly averaging, which is simply an impermissible request to reweigh the evidence. See Downhole Pipe & Equip., L.P. v. United States, 776 F.3d 1369, 1376-77 (Fed. Cir. 2015) (explaining the court may not reweigh the record evidence). The regulation specifically gives Commerce the discretion to choose the length of the shorter period. 19 CFR § 351.414(d)(3) ("{T}he Secretary may calculate weighted averages for such shorter period as the Secretary deems appropriate."). In light of this, the Court should reject Nexco's claims (Nexco's Comments at 15-19) that the existence of hyperinflation does not justify using shorter averaging periods when prices used to determine normal value are in U.S. dollars.

NONCONFIDENTIAL
VERSION

In any case, Commerce found that "the U.S. dollar gross unit prices that Nexco reported

also differ over the POI, [

]." <u>Remand Results</u> at 33 (internal citations omitted).

Commerce explained:

> For example, Nexco's product with the largest sales volume sold in
> the U.S. market saw an [
>                                    ] over the POI, while Nexco's
> product with the largest sales volume sold in the comparison
> market saw an [
>                                    ] over the POI.  Commerce's own
> analysis in the *Final Determination* also reflects this trend with
> respect to the monthly comparison market prices used in the
> calculation of normal value.

<u>Id.</u> (citing Petitioners' Administrative Case Brief (Jan. 14, 2022) at Attachment 2 (CR 802; PR

421)).[7]  In aggregate (<u>i.e.</u>, all sales), Nexco's USD-denominated U.S. prices [          ] by

[       ] percent over the POI and its USD-denominated comparison market prices [            ]

by [       ] percent over the POI.  <u>See</u> Petitioners' Rebuttal Brief at Att. 2 (CR 805; PR 426).

Accordingly, the changes in Nexco's U.S. and comparison market prices are [

] even when denominated in USD.

Commerce has demonstrated with record data and analysis that prices differed significantly

during the POI, thereby satisfying the condition provided in the regulation for applying a shorter

averaging period.

Responding to Nexco's claim that its comparison market sales are somehow insulated

from the effects of high inflation because they were made in U.S. dollars, the <u>Remand Results</u>

explain that "high inflation impacts the margin calculations even when the invoiced sale prices

---

[7]     As discussed in more detail below, it is telling that ***nowhere*** in its comments does NEXCO
actually challenge Commerce's finding of [                ] price changes over the POI.

are not denominated in the respondent's domestic currency." <u>Remand Results</u> at 35. During the investigation, Nexco explained that regardless of in which market, or in which currency, the company earns sales revenue, it has to return that sales revenue to Argentina and convert it into ARS in order to recoup its inflation-driven, ARS-denominated costs. <u>See id.</u> at 35 (citing Letter From Morris, Manning & Martin, LLP To Sec'y Commerce, *Raw Honey from Argentina, Case No. A-357-823: NEXCO S.A.'s Sections B-D Questionnaire Response,* at B-30, C-28 (Aug. 25, 2021) (CR 216; PR 205) (describing how Nexco has to convert the USD-denominated sales revenue it earns from selling in Germany and the United States into pesos)). Nexco's denominating its selling prices in USD does not immunize those prices from inflationary pressures because the devaluation of the ARS with respect to the USD did not keep pace with Argentine inflation. <u>Id.</u> In the <u>Remand Results</u>, the Department cites record evidence in the form of Petitioners' administrative rebuttal brief containing analysis that demonstrates this fact. <u>Id.</u> at 35 n.152 (citing Petitioners' Rebuttal Brief at 52-54 and Att. 1 (Jan. 31, 2022) (CR 805; PR 426)).[8]

---

[8] Defendant-Intervenors' analysis explains that if an Argentine company kept its USD-denominated selling prices constant in September and October 2020, then its ARS-denominated sales revenue would have increased by 2.6860 percent from September to October due to the devaluation of the ARS with respect to the USD based on the record data for exchange rates. <u>See</u> Petitioners' Rebuttal Brief at 52-54 and Att. 1 (CR 805; PR 426). Petitioners also explained that by contrast, the Argentine company's costs would have increased by 6.0455 percent from September to October based on the record data for Argentine due to inflation. <u>Id.</u> This means that in order to maintain the same profitability level in September and October, the Argentine company would have to increase its USD-denominated selling prices by 3.2716 percent from September to October, which is an annualized increase of 47.1536 percent. <u>Id.</u> Consequently, the effect of high inflation on a company's costs puts inflationary pressure on its selling prices, even when those selling prices are denominated in USD.

Third, the remainder of Nexco's arguments are unpersuasive.  NEXCO Comments at 15-25.[9]  Nexco quibbles with Commerce's discussion of a correlation between costs and prices, but Nexco itself conceded during the investigation that Argentine inflation affected its costs and the record shows that its prices were in USD.  See NEXCO's Case Brief at 35 (Jan. 14, 2022) (CR 801; PR 420) ("price increases in the acquisition costs far exceed the rate of inflation ***but certainly fully reflected inflation.***") (emphasis added).[10]  Nexco admits that its inflation-driven costs would put inflationary pressures on its selling prices even when those prices are denominated in USD.  Commerce confirmed this to be the case by finding that Nexco's costs are "reasonably linked" with its selling prices.  Final IDM at 27; see also Remand Results at 23 ("Nexco's sale prices correlate with changes in Nexco's cost of manufacturing, which the *Remand Order* acknowledges were impacted by high peso inflation.") (citations omitted).  Contrary to Nexco's claims, in no way does this connection between costs and prices undermine the Remand Results.

Nexco also challenges Commerce's discussion of Union Steel Manufacturing Co. v. United States and argues that case involved an administrative review, not an investigation, and a different regulation, a fact that Commerce acknowledges in the Remand Results.  See Nexco Comments at 20-21 (citing 190 F. Supp. 3d 1326, 1339-41 (Ct. Int'l Trade 2016)).  Commerce,

---

[9]   It is notable that the arguments on pages 15-17 of Nexco's comments cite to no authority or precedent to support it claims; the only citations are to the portions of the Remand Results with which Nexco disagrees.  Nexco cites several prior agency decisions on pages 18-19 of its comments, none of which Nexco pointed to in its draft comments to Commerce in support of its arguments.  Thus, it is unsurprising that none of those agency decisions is discussed in the Remand Results.  In any case, none of those cases involved high inflation and, therefore, are of limited value in this situation where Commerce is relying on the existence of high inflation and the significant differing of prices to use monthly averaging.

[10]   Defendant-Intervenors also submitted regressions showing that Nexco's USD-denominated selling prices were driven by Argentine inflation.  Petitioners' Rebuttal Brief at 57-60 and Atts. 3-5 (Jan. 31, 2022) (CR 805; PR 426).

however, cited <u>Union Steel</u> to support "the use of shorter price averaging periods when either quarter cost averaging periods of the high inflation methodology is used in an investigation." <u>Remand Results</u> at 33 (citing 190 F. Supp. 3d 1326, 1339-41 (Ct. Int'l Trade 2016)).  Here, the Department "reasonably found that costs may be defined by month rather than by the entire period because of the presence of high inflation in the domestic market, similar to the situation in <u>Union Steel</u> where Commerce found the costs may be defined by quarter."  <u>Id.</u> at 34.

Nexco also attempts to discredit Commerce's reliance on the exhibit Defendant-Intervenors provided with their administrative case brief by claiming Commerce previously declined to rely on the exhibit for its cost analysis.  Nexco Comments at 22.  The purpose on remand is different though, as Commerce analyzed prices and explained "the U.S. dollar gross unit prices that Nexco reported also differ over the POI, [

                                                     ].  <u>Remand Results</u> at 33 ("Nexco's product with the largest sales volume sold in the U.S. market saw an [

                                 ] over the POI, while Nexco's product with the largest sales volume sold in the comparison market saw an [

                                 ] over the POI.") (emphasis added) (internal citations omitted).  Perhaps most telling is the Nexco does not actually challenge, or even discuss, the accuracy or relevance of these findings of [            ] price changes over the POI; it simply argues that Commerce did not originally rely on that analysis.

Lastly, Nexco cites to prior agency decisions in <u>Polyvinyl Alcohol from Taiwan</u> and <u>Live Swine from Canada</u> to argue that Commerce previously declined to use shorter averaging periods when, despite price changes, prices in the two markets moved in tandem.  Nexco Comments at 23.  Nexco failed to present this argument and accompanying citations to Commerce in the first

instance, just like for the agency cases discussed in footnote 6, it is unsurprising that Commerce does not discuss them in the <u>Remand Results</u>.  Because Nexco failed to raise this issue at the administrative level, and because no exceptions apply (<u>e.g.</u>, this is not a pure question of law and it would not have been futile for Nexco to present the argument to Commerce), the Court should apply the doctrine of administrative exhaustion and dismiss this argument.[11]

In any event, the cases do not undermine the <u>Remand Results</u>.  Nothing in the excerpt Nexco cites from <u>Live Swine from Canada</u> undermines Commerce's invocation of shorter averaging periods here based on its finding that prices differed significantly.  Nexco Comments at 24 (citing <u>Notice of Final Determination of Sales at Less Than Fair Value: Live Swine From Canada</u>, 70 Fed. Reg. 12,181 (Dep't Commerce Mar. 11, 2005), and accompanying issues and decision memorandum at 31).  That decision also discusses a prior case, <u>PSF from Korea</u>, in which Commerce found prices changes during the POI were *not* significant, the opposite of Commerce's finding here.  <u>Id.</u>  In <u>Polyvinyl Alcohol from Taiwan</u> Commerce stated that prices tracked each other closely during the POI such that monthly averaging was unnecessary.  Nexco Comments at 24-25 (citing <u>Notice of Final Determination of Sales at Less Than Fair Value: Polyvinyl Alcohol from Taiwan</u>, 61 Fed. Reg. 14,064, 14,069 (Dep't Commerce Mar. 29, 1996)).  But Nexco has never argued to Commerce that its prices and costs tracked closely such that using a shorter averaging period was unnecessary.  Indeed, the record shows otherwise.  For example, Nexco's product with the largest sales volume sold in the U.S. market saw an [

] over the POI, while

---

[11]  <u>See</u> <u>McKart v. United States</u>, 395 U.S. 185, 193 (1969) ("{t}he doctrine of exhaustion of administrative remedies provides 'that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted.'") (quoting <u>Myers v. Bethlehem Shipbuilding Corp.</u>, 303 U.S. 41, 50-51 (1938)).

NONCONFIDENTIAL
VERSION

Nexco's product with the largest sales volume sold in the comparison market saw an **[**

**]** over the POI.

Accordingly, the record does not support Nexco's claims and, in fact, Commerce reasonably determined that the data support a finding that prices differed significantly such that use of a shorter averaging period was appropriate and consistent with the regulation.[12]

## V.   **CONCLUSION**

For the reasons provided herein, we respectfully request that the Court reject NEXCO's challenges and affirm the Remand Results in their entirety.

Respectfully submitted,

R. ALAN LUBERDA
MELISSA M. BREWER

Counsel to Defendant-Intervenors

---

[12]   As discussed earlier in this submission, Nexco has shifted positions in its remand comments. It now appears to argue that a "POI weighted average comparison period" is appropriate, when it argued before the Court previously that quarterly averaged should be used.  Compare NEXCO Comments at 24 ("Commerce does not even attempt to argue that the use of the POI weighted average comparison period would be distortive . . . . ") with Remand Order at 20 ("Nexco claims that Commerce improperly compared its U.S. sales with third-country sales to Germany on a monthly basis, rather than a quarterly basis.").

**CERTIFICATE OF COMPLIANCE
WITH COURT OF INTERNATIONAL TRADE
STANDARD CHAMBERS PROCEDURES**

Pursuant to the Court of International Trade Standard Chambers procedures, counsel for American Honey Producers Association ("AHPA") and the Sioux Honey Association ("SHA") (collectively, "Defendant-Intervenors" or "Petitioners") certifies that this Reply Comments in Support of the U.S. Department of Commerce's Remand Results contain 5,717 words, including footnotes.  The word count certification is made in reliance on the word-count feature contained in Microsoft Word Office 2013.

/s/ Melissa M. Brewer
R. ALAN LUBERDA
MELISSA M. BREWER
KELLEY DRYE & WARREN LLP
3050 K Street, N.W., Suite 400
Washington, DC  20007
(202) 342-8400

Counsel to Defendant-Intervenors

Dated:  December 22, 2023