IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| NEXCO S.A., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> AMERICAN HONEY PRODUCERS ASSOCIATION AND SIOUX HONEY ASSOCIATION, <br><br> Defendant-Intervenors | Court No. 22-00203 |

**PLAINTIFF NEXCO S.A.'S REPLY TO DEFENDANT INTERVENORS' COMMENTS IN SUPPORT OF REMAND RESULTS**

Julie C. Mendoza
Donald B. Cameron
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Stephen A. Morrison

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Avenue, NW
Suite 800
Washington, D.C. 20036
(202) 216-4817

*Counsel to Plaintiff NEXCO S.A.*

December 22, 2023

# TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................................................................. i

**I. INTRODUCTION** ............................................................................................................... 1

    A.  Commerce Is Unable To Explain How Its Proxy For Beekeeper Costs Is Not Over-Inclusive And, Therefore, The Court Must Find Commerce's Methodology Unreasonable ............................................................................................................... 2

    B.  Commerce's Redetermination Did Not Provide A Legal Basis For Departing From Period-Wide Sales Comparisons ......................................................................................... 8

**II. CONCLUSION** ................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albemarle Corp. v. United States*,
   821 F.3d 1345 (Fed. Cir. 2016)......................................................................................6, 7

*Hyundai Steel Company v. United States*,
   19 F. 4th 1346 (Fed Cir. 2021) ............................................................................................6

*Nexco S.A. v. United States*,
   639 F. Supp. 3d 1312 (Ct. Int'l Trade June 7, 2023) ...................................................... *passim*

*SKF USA Inc. v. United States*,
   630 F.3d 1365 (Fed. Cir. 2021)............................................................................................4

**Statutes**

19 U.S.C. § 1677(28) ...............................................................................................................4, 5

19 U.S.C. § 1677b(b)(3) ..........................................................................................................4, 5

19 U.S.C. § 1677b(e) ...............................................................................................................5, 6

**Regulations**

19 C.F.R. § 351.414(d)(3)............................................................................................................8

**Other Authorities**

Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, 1994
   U.S.C.C.A.N. 4040, 4172 (1994),......................................................................................4

*Raw Honey from Argentina: Final Determination of Sales at Less than Fair Value
   and Final Affirmative Determination of Critical Circumstances*, 87 Fed. Reg.
   22,179 (Dep't Commerce Apr. 14, 2022), PR 444 ...........................................................2, 3

# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

# BEFORE THE HONORABLE CLAIRE R. KELLY, JUDGE

|  |  |
|---|---|
| NEXCO S.A., ) | |
| Plaintiff, ) | |
| v. ) | |
| UNITED STATES, ) | Court No. 22-00203 |
| Defendant, ) | |
| AMERICAN HONEY PRODUCERS ) ASSOCIATION AND SIOUX HONEY ) ASSOCIATION, ) | |
| Defendant-Intervenors. ) | |

## PLAINTIFF NEXCO S.A.'S REPLY TO COMMENTS ON COMMERCE'S REMAND REDETERMINATION

## I. INTRODUCTION

In accordance with the Court's August 25, 2023 scheduling order, as amended by the Court, *see* ECF No. 58, Plaintiff NEXCO S.A. ("Nexco"), hereby submits its reply to Defendant-Intervenors' comments in support of the U.S. Department of Commerce's ("Commerce") Final Results of Remand Redetermination Pursuant to Court Remand in this action. *See* Def.-Ints.' Cmts. in Supp. of Remand Results ("Def.-Ints.' Cmts."), ECF No. 54; *see also* Final Results of Redetermination Pursuant to Court Remand, *Nexco S.A. v. United States*, Court No. 22-00203, Slip Op. 23-85 (CIT June 7, 2023), (Oct. 13, 2023) ("Redetermination"), ECF No. 49, CRR 3.[1]

---

[1] The administrative record for this case is divided into a public record ("PR") and confidential record ("CR"). The remand administrative record is divided into a public remand record ("PRR") and a confidential remand record ("CRR"). Documents are cited by their

1

This action challenges Commerce's final determination in *Raw Honey from Argentina: Final Determination of Sales at Less than Fair Value and Final Affirmative Determination of Critical Circumstances*, 87 Fed. Reg. 22,179 (Dep't Commerce Apr. 14, 2022) ("*Final Determination*"), PR 444, and accompanying Issues and Decision Memorandum ("I&D Mem."), PR 438, as amended by the Redetermination.

For the reasons discussed herein, Commerce's Redetermination fails to comply with the Court's instructions and misinterprets or disregards the Court's reasoning and holdings in *Nexco S.A. v. United States*, 639 F. Supp. 3d 1312 (Ct. Int'l Trade June 7, 2023), ECF No. 43. Accordingly, Nexco requests that the Court hold that the Redetermination is unsupported by substantial evidence and contrary to law, and that the Court again remand this action to Commerce to reach a decision in conformity with this holding.

> **A.** **Commerce Is Unable To Explain How Its Proxy For Beekeeper Costs Is Not Over-Inclusive And, Therefore, The Court Must Find Commerce's Methodology Unreasonable.**

Nexco already has submitted extensive comments on the Redetermination. These rebuttal comments will focus on key aspects of Defendant-Intervenors' comments which, in several instances, depart from Commerce's reasoning in the Redetermination and are unsupported by the investigation record or the appeal before this Court. In other places, Defendant-Intervenors' comments only serve to highlight Commerce's insistence on the correctness of its *Final Determination* and the evidence on which it was based and consequently, Commerce's failure to come to terms with the Court's remand instructions.

Defendant-Intervenors misapprehend Commerce's investigation methodology and position before this Court. Commerce did not state that it was limiting its investigation to the

---

confidential and/or public record number provided in the Index to the Administrative Record, ECF No. 20, or Index to the Remand Administrative Record, ECF No. 51.

costs of the "exporter" as Defendant-Intervenors claim. Def.-Ints.' Cmts. at 6 ("{Commerce} has the discretion to examine the costs of both the exporter and producer, or *only* that of the exporter. Here, {Commerce} exercised this discretion to examine only the exporter."). Instead, Commerce was clear that it was following its long-standing practice in agricultural cases of calculating cost of production ("COP") based on the cost of producing the subject merchandise—raw honey—by the producers of that subject merchandise (the beekeepers). Commerce did not claim to be changing or deviating from that longstanding practice in this case. Rather, Commerce determined that, in this case, difficulties prevented it from obtaining sufficiently representative beekeeper cost data from the beekeepers. I&D Mem. at 8; Redetermination at 7. Commerce therefore relied on the exporters' acquisition costs as a surrogate, or proxy, for the beekeepers' costs of producing the subject merchandise. *See* I&D Mem. at 13; Redetermination at 6. A surrogate or proxy must therefore reflect the beekeeper's cost of production.

The Court directed Commerce to explain how it could conclude that the proxy it selected—Nexco's acquisition prices—did not overstate the COP of the raw honey when those acquisition prices exceeded the beekeeper costs by two or three times based on the record evidence that Commerce collected, verified and relied on to find that the beekeepers' prices to Nexco exceeded their cost of production. *See Nexco S.A.*, 639 F. Supp. 3d at 1319. Given Commerce's detailed calculations that showed the large disparity between the two, the Court asked how it could be a reasonable proxy for the beekeeper costs of production. *Id.* Commerce has not answered this question in the Redetermination.

Instead, Commerce argues that the acquisition costs do not need to be a reasonable surrogate for the cost of production, as defined by the statute, because Commerce's mission is to

3

include all costs. *See* Redetermination at 25–26; *see also* I&D Mem. at 11. However, Commerce's citations as well as Defendant-Intervenors' citations are to the statutory provision that defines "exporter or producer"[2] and provides that Commerce can *collect information* from both the exporter and the producer. *See* Redetermination at 25–26 (citing to 19 U.S.C. § 1677(28) and Statement of Administrative Action ("SAA"), H.R. Doc. No. 103-316, 1994 U.S.C.C.A.N. 4040, 4172 (1994)); Def.-Ints.' Cmts. at 5–6 (same). However, Commerce's assertion that all it needs to be concerned about is including all the costs is not supported by the provisions of the statute that define the methodology for determining the "cost of production." 19 U.S.C. § 1677b(b)(3). Furthermore, even 19 U.S.C. § 1677(28) requires that the data of the exporter and producer be collected and relied on "to the extent necessary to *accurately calculate* the total amount incurred and realized for costs, expenses, and profits in connection with production and sale of that merchandise." 19 U.S.C. § 1677(28) (emphasis added). Commerce does not have carte blanche to capture more of the costs than permitted by statute and "cost of production" does not include profit. *See* 19 U.S.C. § 1677b(b)(3).

Defendant-Intervenors argue that the statutory definition of the term "exporter or producer" and the SAA permit Commerce to include the producer's profit in COP. *See* Def.-Ints.' Cmts. at 5 (citing to 19 U.S.C. § 1677(28) and SAA, 1994 U.S.C.C.A.N. at 4172). The statutory provision at issue states as follows:

> The term "exporter or producer" means the exporter of the subject merchandise, the producer of the subject merchandise, or both *where appropriate*. For purposes of section 1677b of this title, the term "exporter or producer" includes both the exporter of the subject merchandise and the producer of the same subject merchandise *to the extent necessary to accurately calculate* the total amount

---

[2] As the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") held "Section 1677(28) defines the term "'exporter or producer.'" *SKF USA Inc. v. United States*, 630 F.3d 1365, 1371 (Fed. Cir. 2021).

> incurred and realized for costs, expenses, and profits in connection with production and sale of that merchandise.

19 U.S.C. § 1677(28) (emphasis added).  Considered in the context of the structure of the statute, it is clear that this provision is focused on defining the exporter and the producer and identifies *the party's or parties'* data that may be used in calculating the various substantive elements needed for the dumping margin calculation.  That is, *where appropriate*, Commerce may use information of the exporter, the producer, or both to the extent needed to accurately calculate U.S. price, home market or third country prices, COP, or constructed value ("CV").  The methodology for actually calculating COP is provided in 19 U.S.C. § 1677b(b)(3) and is expressly limited to the costs of materials and fabrication, selling, general, and administrative expenses, and the cost of packing.  It does not include profit.  Using the language of Section 1677(28), the inclusion of beekeeper profits is not "appropriate," nor is it necessary in order to "accurately calculate" COP as that term is defined in 19 U.S.C. § 1677b(b)(3).

The reference to "profits" in Section 1677(28) is properly understood as a reference to the computation of CV, which is defined in 19 U.S.C. § 1677b(e) as including the "amounts incurred and realized by . . . the *exporter or producer* . . . for profits in connection with the production and sale of a foreign like product."  Thus, when calculating constructed value, Section 1677(28) makes clear that it may be "appropriate" to use information of the exporter, producer, or both to "accurately" calculate the profit element.  But nothing in Section 1677(28) authorizes Commerce to disregard the terms of 19 U.S.C. § 1677b(b)(3) and include the producer's profit in the computation of COP.

Similarly, the SAA distinguishes CV from COP.  Commerce claims that the SAA "clarifies that where different firms perform the production and selling functions, Commerce may include the costs, expenses, and profits of each firm."  Redetermination at 25–26.  However,

5

the U.S. Court of Appeals for the Federal Circuit has also looked to the language of 19 U.S.C. § 1677b for the definition of the proper elements of COP and CV. The Federal Circuit distinguished the elements of COP in 19 U.S.C. § 1677b(b)(3) and CV in 19 U.S.C. § 1677b(e), noting that "{s}ection 1677b(e) contains a similar methodology for calculating constructed value . . . although constructed value also includes an amount for profits." *Hyundai Steel Company v. United States*, 19 F. 4th 1346, 1350 (Fed Cir. 2021).

Defendant-Intervenors and Commerce work hard to dismiss the significance of Commerce's record evidence and conclusions that the prices were above the costs.[3] Yet, this is the very evidence on which Commerce relies. Commerce explicitly asserted that *because* acquisition prices were above the beekeepers' costs, "{c}onsequently . . . it {was} reasonable to rely on . . . acquisition prices as a proxy." Decision Mem. for the Preliminary Affirmative Determination in the Less-Than-Fair-Value Investigation of Raw Honey from Argentina (Nov. 17, 2021) at 26, PR 365; *see also* I&D Mem. at 13. If the evidence serves that purpose, how can it not now also support the finding that the acquisition prices were over-inclusive of beekeeper costs? Since it is clear that Commerce was prepared to adjust the acquisition prices upwards if it found that Nexco's suppliers were selling below their own production costs, *see* Redetermination at 7; I&D Mem. at 12, Commerce can now simply adjust those prices down to take out profit and create a reasonable proxy for beekeeper costs.[4]

---

[3] Commerce obviously conducted a below cost test of acquisition prices even though the beekeepers and NEXCO are not related because it intended to rely on beekeeper costs. At no point did Commerce disavow the validity of its conclusions based on this data in its determination. *See* Redetermination at 27 (relying on the beekeeper data to conclude that acquisition prices were above beekeeper costs); I&D Mem. at 12–13 (same). Commerce's attempts to do so before the court are unconvincing and unavailing.

[4] Commerce's complaint that the beekeeper costs on record have not been shown to be representative of *all* beekeeper costs, Redetermination at 8–9, 28, cannot justify its refusal to rely on those costs, where, as here, it was Commerce that determined to limit the beekeeper data it

6

In the end, Commerce's only "answer" to the question the Court asked, is that if you look at it from the perspective of the exporter, then Nexco's COP is not overinclusive as it is based on Nexco's books and records. *See* Redetermination at 9. This is not responsive because the question is whether the acquisition prices are a surrogate for the costs of the beekeepers, not whether they reflect Nexco's books and records or are used to determine Nexco's prices for processed honey. As discussed in Nexco's comments in opposition to the Redetermination, Commerce cites no legal authority for this assertion and it is factually inaccurate. *See* Pl. Nexco S.A.'s Cmts. on Commerce's Remand Redetermination ("Nexco's Cmts.") at 6 n.3, ECF No. 56. Defendant-Intervenors and Commerce seem to have forgotten that Commerce did not rely on the unadjusted books and records of Nexco for its acquisition prices. *See* I&D Mem. at 26 (explaining that Commerce adjusted Nexco's COP by employing its high inflation methodology). Commerce departed from those records because of the distortion caused by hyperinflation in Argentina. *See id.; see also* Redetermination at 15-16 (explaining how Commerce adjusted Nexco's booked costs for inflation). The acquisition costs computed by Commerce bore little resemblance to the actual monthly costs Nexco paid for honey and recorded in its books. The costs (acquisition prices) were restated and inflation-adjusted. I&D Mem. at 34. Nexco never "relied" on these adjusted costs to set prices—it had no idea what they would be. Quite apart from this legal fiction that Nexco's prices (in dollars) were based on the costs in Nexco's books and records, this argument has no legal underpinnings as discussed at length in Nexco's comments. *See* Nexco's Cmts. at 15–19.

---

would attempt to collect and use as a surrogate. As the Federal Circuit has explained, "Commerce may not justify 'the absence of evidence by invoking procedural difficulties that were at least in part a creature of its own making.'" *Albemarle Corp. v. United States*, 821 F.3d 1345, 1358 (Fed. Cir. 2016) (quoting *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013)).

### B. Commerce's Redetermination Did Not Provide A Legal Basis For Departing From Period-Wide Sales Comparisons.

Commerce's response to this Court in the Redetermination repeatedly rejects the idea that Commerce's regulation of averaging periods in any way restricts its ability to rely on its inflation findings to justify a shorter price averaging period. *See* Redetermination at 23 ("For the reasons explained above, Commerce finds that the regulations do not strictly circumscribe the situations in which Commerce may resort to shorter averaging periods for prices."). As explained in Nexco's comments in opposition to the Redetermination, Commerce's assertion in the Redetermination that the inflation methodology justifies the use of a shorter averaging period where both U.S. and third country prices are denominated in U.S. dollars is unfounded and largely repeats arguments the Court has already found unavailing. Nexco's Cmts. at 15–19.

It is only in the closing paragraphs of the Redetermination that Commerce addresses the Court's instruction to explain how its decision to restrict sales comparisons to a month satisfies the requirements of 19 C.F.R. § 351.414(d)(3). Redetermination at 22–23. Commerce's analysis is sparse, perfunctory and devoid of an explanation of why the change in Nexco's sales prices it cites fits within the requirements of the regulation or justified restricting sales comparisons to a month. *See id*. As discussed in Nexco's comments, the factual findings cited by Commerce were drawn from the quarterly cost analysis, which considered movements in *converted peso prices* not the U.S. dollar prices in which the sales were denominated. Nexco's Cmts. at 19–20; *see also* Redetermination at 23 (citing to Letter to Sec'y Commerce, "Raw Honey from Argentina, Case No. A-357-823: NEXCO S.A.'s Supplemental Section D Questionnaire Resp.," (Oct. 12, 2021) at Ex. D-41-3 (Nexco's response to question 18(b))), CR 443-47. At Defendant-Intervenors' urging, Commerce also cited in the Redetermination to Defendant-Intervenor's case

briefs before Commerce discussing dollar prices.[5] *See* Redetermination at 30, 33 & nn.141–43. However, despite Defendant-Intervenors' efforts to augment Commerce's actual findings, Def.-Ints.' Cmts. at 8–9, Commerce never attempted to explain how or why such price changes were in fact "significant."[6] *See* Redetermination at 23, 33. Instead, Commerce only cited to data indicating that both German and U.S. sales prices increased during the POI *at similar rates* without discussing the conclusions it drew from such consistent changes in both markets. *Id*. at 33. Nor does Commerce attempt to explain why *monthly* price comparisons would correct any particular distortion arising from the use of the POI average prices. In the absence of such reasoning and evidence, the Court must find that Commerce has failed to meet its burden of demonstrating that the regulation justified its decision to resort to shorter sales averaging periods.

Defendant-Intervenors' remaining attempts to buttress Commerce's central holding that inflation affects dollar-denominated prices are no more compelling. Neither Commerce nor Defendant-Intervenors can overcome the obvious. Dollar-denominated prices are not driven by peso inflation. Peso inflation in Argentina may affect Nexco's costs, but there is no support for Commerce and Defendant-Intervenors' contention that inflation affected U.S. dollar prices.

## II.  CONCLUSION

For the foregoing reasons, Nexco respectfully requests that this Court hold that Commerce's Redetermination is unsupported by substantial evidence and otherwise not in accordance with the law and remand the case to Commerce with instructions to revise its

---

[5] Commerce's references to its program output are difficult to interpret, as they appear to contain only samples from its programs to calculate normal value. *See* Redetermination at 33 n.144 (citing to Mem. to The File, "Final Determination, NEXCO S.A." (Apr. 7, 2022), Attachment 1 (comparison market output, pp. 74–76), CR 817, CR 821).

[6] Under Commerce's approach before this Court, shorter averaging periods would become the rule rather than the exception.

calculation of Nexco's dumping margin by (1) adjusting the acquisition prices to the beekeepers to remove beekeeper profit and (2) perform price-to-price comparisons of U.S. dollar-denominated sales on a POI average basis.

Respectfully submitted,

/s/ Julie C. Mendoza
Julie C. Mendoza
Donald B. Cameron
R. Will Planert
Brady W. Mills
Mary S. Hodgins
Eugene Degnan
Jordan L. Fleischer
Nicholas C. Duffey
Stephen A. Morrison

**MORRIS, MANNING & MARTIN, LLP**
1333 New Hampshire Avenue, NW
Suite 800
Washington, D.C. 20036
(202) 216-4817

*Counsel to Plaintiff NEXCO S.A.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the Standard Chambers Procedures of the U.S. Court of International Trade in that it contains 2805 words including text, footnotes, and headings and excluding the table of contents, table of authorities and counsel's signature block, according to the word count function of Microsoft Word 2016 used to prepare this brief.

/s/ Julie C. Mendoza<br>
Julie C. Mendoza

Dated: December 22, 2023